UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| LEONARDA VALENTIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-240 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of

a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to

disability insurance benefits (DIB). On November 8, 2005, plaintiff filed her application for DIB

benefits claiming a December 1, 2004 onset of disability. (A.R. 58-60). Plaintiff's claim was denied

on initial review. (A.R. 24, 49-52). On March 12, 2008, plaintiff received a hearing before an

administrative law judge (ALJ), at which she was represented by counsel. (A.R. 482-534). On

August 12, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-23).

On February 5, 2009, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became

the Commissioner's final decision.

On March 18, 2009, plaintiff filed her complaint seeking judicial review of the

Commissioner's decision denying her claim for DIB benefits. The parties have voluntarily consented

under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure to the dispositive

jurisdiction of a United States Magistrate Judge.  (docket # 7).  The issues raised by plaintiff are as follows:

  1.   The ALJ erroneously discounted plaintiff's mental limitations; and

  2.   The ALJ lacked valid reasons to reject plaintiff's reported limitations.

(Statement of Errors, Plf. Brief at 2, docket # 8).  Upon review, the court finds that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.  The Commissioner's decision will be affirmed.


**Standard of Review**

          When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial

evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of December 1, 2004, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after December 1, 2004. (A.R. 16). The ALJ found that plaintiff had the severe impairment of cervical spondylosis. (A.R. 16). She did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 18). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).

The claimant could lift and/or carry no more than 20 pounds as documented in Exhibit 5F, p.1 [A.R. 200]; and in an 8-hour workday with normal breaks, she could stand and/or walk for a total of about 6 hours, could sit for a total of about 6 hours, and could do unlimited pushing and/or pulling within light exertional levels. She could frequently climb ramps and stairs, balance, stoop, kneel, and crouch; could occasionally climb ladders, ropes or scaffolds; and could occasionally crawl. The claimant would have no environmental restrictions. She can speak English[,] but would be unable to engage in work requiring reading instructions or writing reports in English.

(A.R. 19). The ALJ determined that plaintiff's subjective complaints were not fully credible:

The claimant alleged disability due to pain in the cervical spine, degenerative narrowing of the disc, [a] problem with the right arm (Exhibit 7E)[A.R. 105] and problems with right shoulder and right upper extremity, cervical spine and left hip (Exhibit 11 E)[A.R. 127]. She stated that Dr. Sak, her family doctor, took her off work;[1] that he restricted her lifting to no more than 10 pounds and nothing over the shoulder and no gripping with her right hand. She stated that she worked in a light duty job for approximately 1 month and was awarded Worker's Compensation benefits. She testified that she was able to converse in English[,] but could not read or write in English, that she went to community education classes 3 times a week for 6 months in Holland[, Michigan] to learn English, that she received a certificate, and that she was given a Spanish version of the Michigan driver's license test. The claimant testified that she was taking massive dosage[s] of Neurontin, was seeing a therapist every 4 weeks, was no longer taking Vicodin and Darvocet, was taking Paxil for migraine headaches, and had trouble sleeping due to pain. When questioned about her daily activities, the claimant was initially quite vague, but eventually testified that she takes care of her personal needs, drives, prepares meals, has friends and family who visit several times a day, and does laundry with her husband folding the clothes and her ironing them. She shops for groceries with her husband and attends church weekly.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

While the undersigned does not doubt that the claimant experiences some difficulty, her statements concerning her impairments and their impact on her ability to work cannot be entirely credited in light of the claimant's own description of her activities and lifestyle, the degree of medical treatment required, the claimant's demeanor at the hearing, the reports of

---

[1]Dr. Sak testified that he "never took [plaintiff] off work completely." (A.R. 364). Further, he stated that when he last saw plaintiff she was working in an office setting. She was able to perform the work and was "happy as a clam to have the job." (A.R. 339-40).

the treating and examining practitioners, the medical history, the findings (or lack thereof) made on examination, and the claimant's assertions regarding her ability to work.

As for the opinion evidence, Dr. Willmarth's residual functional capacity [assessment] at Exhibit 10F [A.R. 300-01] is widely inconsistent with his treating notes (Exhibit 9F)[A.R. 241-92] as to the severity of the claimant's psychiatric symptoms. He notes the claimant appears frustrated at many points due to the ongoing Worker's Compensation claim and not on the basis of pain or other inherent psychiatric diagnoses. Dr. Tyler Murphy's residual functional capacity [assessment] was significantly discounted based upon his obvious misgivings about even completing the residual functional capacity questionnaire (Exhibit 11F, p. 4 and 16F, p. 2)[A.R. 305, 473]; and his statement of reliance on Dr. Kane-Smart's records and opinions (Exhibit 11F, p.3)[A.R. 304] which already addresses the residual functional capacity issue. Dr. Murphy does not explain why he differs from her. The undersigned finds that Dr. Kane-Smart had the best possible perspective to assess and identify the claimant's limitations based on her multiple treating contacts.[2] The fact that she refused to go below a light residual functional capacity is an indication that the claimant's condition simply did not justify more severe restrictions. Indeed, in a different forum the claimant indicated a willingness to do light work, but her former employer would not provide it (Exhibit 12F)[A.R. 313].

The undersigned does not assign significant weight to the restrictions of Dr. Sak (Exhibit 13F, pp. 46 and 68)[A.R. 368, 390] because he contradicts Dr. Kane-Smart in the issue of lifting (10 pounds opposed to 20 pounds) and also addresses gripping and grasping which the undersigned does not find as a severe impairment of the hands and wrists.

The claimant's former employer ceased operations (Exhibit 9F, p. 25)[A.R. 265] which would certainly give the claimant some incentive to seek these benefits as would her unsatisfying outcome in her Worker's Compensation claim (Exhibit 9F, p. 9)[A.R. 249].

---

[2]Earlier in his opinion, the ALJ summarized the opinions of plaintiff's treating orthopedist, Dr. Kane-Smart:

> The restrictions from Dr. Kane-Smart, a treating orthopedist, as set forth in Exhibits 5F and 14 F [A.R. 200-15, 407-36] support the residual functional capacity. In her note of June 13, 2005, she restricted the claimant to lifting up to 15 pounds, but noted that the claimant should be able to do much more (p.5)[A.R. 204, 434, 444]. In her note of September 29, 2005, Dr. Kane-Smart encouraged the claimant to continue with a home exercise program and restricted her to lifting up to 20 pounds which is consistent with light work (p.1)[A.R. 200, 448]. Following examination in February 2006, Dr. Kane-Smart continued previous restrictions of 20 pounds lifting (Exhibit 12F, p. 17)[A.R. 322, 449]. . . . [O]n January 9, 2006, the claimant reported that she would be willing to work light duty, but had been told that nothing was available at the company (p.8) [A.R. 313].

(A.R. 19).

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 CFR 404.1529(c)(3)/416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted, and that the residual functional capacity finding in this case is justified.

(A.R. 20-21). Plaintiff was unable to perform her past relevant work. The ALJ found that plaintiff was 43-years-old on her alleged onset of disability date and was 46-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 21). Plaintiff is able to communicate in English, but is illiterate in reading and writing English. (A.R. 21). The transferability of job skills was not material because plaintiff's past relevant work was unskilled. (A.R. 21). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 22,400 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 525-27). The ALJ held that this constituted a significant number of jobs. Using Rule 202.16 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 14-23).

**1.**

Plaintiff argues that the ALJ "erroneously discounted" her mental limitations. (Plf. Brief at 7-12). She claims that the ALJ committed reversible error when he failed to find that she had a severe mental impairment. This argument is patently meritless. The ALJ found at Step 2 of

the sequential analysis[3] that plaintiff had the severe impairment of cervical spondylosis. (A.R. 16).

The ALJ's failure to find additional severe impairments at Step 2 is "legally irrelevant."[4] *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Simpson v. Commissioner*, 344 F. App'x 181, 190-91 (6th Cir. 2009); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

**2.**

Plaintiff argues that the ALJ failed to give adequate weight to the opinions of a treating psychologist, Eric Willmarth, Ph.D. (Plf. Brief at 7-12). Psychologist Willmarth conducted his initial consultation on February 28, 2005. (A.R. 293-95). Plaintiff related a history of neck and shoulder problems that had never required surgical intervention. She expressed frustration that she had been "let go" by her employer and was involved in a worker's compensation dispute. She had no history of psychological counseling. Psychologist Willmarth recommended "relaxation training"

---

[3]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

[4]The ALJ considered plaintiff's severe and non-severe impairments when he made his factual finding regarding plaintiff's RFC. (A.R. 15, 19-21). The ALJ's RFC determination is consistent with the opinion of plaintiff's treating orthopedist, Dr. Kane-Smart, and is supported by more than substantial evidence.

to help plaintiff deal with her tension and cognitive behavioral therapy focused on "coming to a better resolution emotionally with her current situation." (A.R. 294). Psychologist Willmarth's progress notes report that plaintiff continued to make progress and that her mood had improved. (*See*, *e.g.*, A.R. 241-92). Plaintiff expressed frustration with the pace and the results of her worker's compensation case. (A.R. 249, 253, 257, 259, 261, 263, 265, 267, 271, 275, 279). Psychologist Willmarth noted that in early 2007, plaintiff traveled to Texas to visit with her family. (A.R. 247).

On December 7, 2007, Psychologist Willmarth completed a two-page "Medical Assessment of Ability to Do Work Related Activities (Mental)." (A.R. 300-01). He gave the following assessment of plaintiff's ability to make occupational adjustments: "good" ability to follow work rules; "fair" ability to relate to co-workers, ability to use judgment, interact with supervisors, and function independently; "poor" ability to deal with the public and maintain attention and concentration; and no ability to deal with work stresses. (A.R. 300). He wrote, "This patient did not discontinue work due to psychological issues and in fact has a long, successful work record. She now suffers from severe anxiety and depression and this will severely limit her ability to return to full time work." (A.R. 300). He stated that plaintiff had a poor ability to understand, remember and carry out complex job instructions, but retained a fair ability to understand, remember and carry out detailed and simple job instructions. (A.R. 301). The ALJ gave little weight to this assessment because it was inconsistent with Psychologist Willmarth's treatment notes and was inconsistent with other substantial evidence in the record. (A.R. 17-18, 20-21). The court finds no error.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x

595, 598 (6th Cir. 2009). Dr. Willmarth's opinion that plaintiff was disabled was not entitled to any particular weight. *Warner*, 375 F.3d at 390. Likewise, "no special significance" is attached to a treating physician's opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment, because these are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390. By contrast, on medical issues, the opinions of treating physicians are given substantial, if not controlling deference. *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

The court finds no violation of the treating physician rule. The ALJ's opinion is supported by more than substantial evidence and the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Psychologist Willmarth's opinions.

**3.**

Plaintiff argues that the ALJ's credibility determination regarding her subjective complaints is not supported by substantial evidence because the ALJ gave "boilerplate" reasons and he had "no legal basis" for rejecting her credibility. (Plf. Brief at 12-20). The court does not make

its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothin v. Commissioner*, 299 F. App'x 516, 521 (6th Cir.  2008).  The court cannot substitute its own credibility determination for the ALJ's.  The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard.  "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773.  "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ noted that plaintiff's MRI showed "mild" cervical spondylosis and that there was "no clear etiology for [her] neck and arm pain." (A.R. 16) (citing A.R. 167, 440).  Plaintiff had never been hospitalized for any mental impairment.  (A.R. 18).  Plaintiff had stated to a treating physician that she was willing to perform light work, but her employer did not have any light work jobs available.  (A.R. 21) (citing A.R. 313).  The ALJ gave valid and substantial reasons supporting his finding that plaintiff's testimony was not fully credible.  (A.R. 20-21).  He did not resort to

"intangible and intuitive notions" about plaintiff's credibility. *See Rogers v. Commissioner*, 496 F.3d 234, 247 (6th Cir. 2007). His explanation was sufficiently detailed to allow meaningful appellate review by this court. *Id.* at 248. It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Cox v. Commissioner*, 295 F. App'x 27, 33-34 (6th Cir. 2008). The court finds that the ALJ correctly applied the law and that his credibility determination is supported by substantial evidence.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:  March 11, 2010          /s/  Joseph G. Scoville
                                United States Magistrate Judge